Joseph L. THOMAS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 23349.

United States Court of Appeals
Fifth Circuit.

Nov. 9, 1966.

Joseph L. Thomas, pro se.

Edward L. Shaheen, U. S. Atty., Charles E. Welsh, Asst. U. S. Atty., Shreveport, La., for appellee.

Before RIVES, THORNBERRY and AINSWORTH, Circuit Judges.

RIVES, Circuit Judge:

The question for decision is whether a sentence permitted by statute can be collaterally attacked under 28 U.S.C. § 2255 because prior to imposing sentence the judge advised the defendant that the judge had no doubt whatsoever as to his guilt, and that if he then confessed his guilt the court would take that into account in the length of sentence to be imposed; while, on the other hand, if he persisted in his denial that he participated in the crime, the court would also take that into account. The defendant chose to persist in his claim of innocence, and the court sentenced him to imprisonment for the maximum term permitted by law.

We appreciate the desirability of the utmost freedom of communication, limited only by the Constitution itself, between the court and the defendant at the time of allocution.[1] We realize in this case that the sentencing judge, for whom we hold high respect, did not consciously intend to infringe upon the defendant's constitutionally guaranteed right to

1. Compare Williams v. People of State of New York, 1949, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337.

choose not to be a witness against himself. We assume that, since the defendant persisted in his claim of innocence, the colloquy did not ripen into an actual infringement on his Fifth Amendment rights. Nonetheless, we answer in the affirmative the question presented, and vacate the sentence, thus affording the district judge an opportunity [2] to again sentence the defendant.

Thomas and two codefendants were indicted in a single count for bank robbery under 18 U.S.C. 2113(a) and (d). The two codefendants pleaded guilty.[3] Thomas pleaded not guilty and was tried to a jury. Thomas testifed at length as a witness in his own behalf.[4] The jury returned a verdict of guilty, and this Court affirmed the judgment of conviction entered on that verdict.[5] The transcript of the proceedings at the time of sentence reads as follows:

"APPEARANCES:

    T. FITZHUGH WILSON, United States Attorney, on behalf of the Government.

    JAMES W. FINLEY, Attorney for Defendant.

    \*    \*    \*    \*    \*    \*

"MR. WILSON: If the Court please, the defendant was convicted in this Court on June 14 for bank robbery and he is here for sentence.

"THE COURT: Is there any reason, Mr. Finley, why sentence should not be imposed at this time?

"MR. FINLEY: No, sir.

"THE COURT: Do you want to make any statement on behalf of the defendant?

"MR. FINLEY: No, sir.

"THE COURT: Do you want to say anything on behalf of yourself?

"THE DEFENDANT: I will repeat again that I am innocent. That's all.

"THE COURT: I am going to tell you something and I want you to think carefully before you answer.

"You have been proven guilty beyond a reasonable doubt by overwhelming evidence—by the testimony of five eye-witnesses, plus the testimony of one of the persons who participated in the robbery.

"I might say, entirely aside from that, on the witness stand Cecle Ray Angelly denied he had any part in the robbery and denied that you had any part in it. He has given signed sworn confessions to the effect that you did have a part in it and he did have a part in it. As a matter of fact, he

---

2. In denying the section 2255 motion, the District Judge noted that the conviction and sentence had been affirmed on appeal and that certiorari had been denied.

3. One of them received a sentence of fourteen years and the other a sentence of eighteen years, while Thomas was later sentenced to the maximum term of twenty-five years. However, our decision is not influenced by the different lengths of the sentences, because the facts and circumstances developed on the trial were such and those in the pre-sentence reports, not in the record, may have been such that we could not hold the difference between Thomas' sentence and the lesser sentences to be an abuse of discretion on the part of the district court.

4. The general theme of his testimony was, of course, a protestation of his claim of innocence, as is indicated by the concluding question and answer on his direct examination.

"Q. Mr. Thomas, did you participate in the bank robbery for which you are accused on February 13th, 1958, of the Commercial National Bank of Shreveport, Louisiana?

"A. Absolutely not."

5. Thomas v. United States, 5 Cir. 1961, 287 F.2d 527. In that opinion, we commented (at p. 528) that "The evidence supporting the jury's verdict was overwhelming." Of course, however, under our system, only the jury had the power authoritatively to find Thomas guilty.

The question now presented was not raised on the appeal. There is, however, no contention that the question was so deliberately by-passed as to preclude it from being subsequently presented by this section 2255 motion. See Fay v. Noia, 1963, 372 U.S. 391, 439, 440, 83 S.Ct. 822, 9 L.Ed.2d 837.

wrote the Court a letter something over a month after he had been sentenced and taken to the penitentiary in which he again admitted his own part in the robbery.

"If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the Court also must take that into account. Now which will it be?

"THE DEFENDANT: I can't speak for Mr. Angelly.

"THE COURT: I am asking you to speak for yourself.

"THE DEFENDANT: I am speaking for myself that I am innocent.

"THE COURT: You persist in that?

"THE DEFENDANT: Yes, sir.

"THE COURT: The sentence of the Court is that you be sentenced to the maximum term permitted by law, twenty-five years."

█ The sentencing of Thomas was the awesome responsibility of the district court alone. Since the sentence did not exceed the maximum limit set by statute, ordinarily it would not be subject to review by this Court.[6] However, in very exceptional circumstances where an abuse of discretion clearly appears, Section 2255 may be employed to vacate the sentence. The Supreme Court has by-passed a closely related question, noting that "Whether § 2255 relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances is a question we * * * do not consider." Hill v. United States, 1962, 368 U.S. 424, 429, 82 S.Ct. 468, 472, 7 L.Ed.2d 417. The Fourth Circuit in United States v. Martell, 1964, 335 F.2d

764, 766, speaking through Chief Judge Sobeloff, said:

"Where the sentence is within the limit set by the statute, we are barred, except in the most exceptional circumstances, from any inquiry we might otherwise be inclined to make. Tincher v. United States, 11 F.2d 18 (4th Cir. 1926); Carpenter v. United States, 280 F. 598, 601 (4th Cir. 1922).

"United States v. Wiley, 278 F.2d 500 (7th Cir. 1960), is an example of exceptional circumstances. There the Circuit Court, in reducing the sentence, predicated its action, not on the severity of the sentence, but on the fact, disclosed by the District Court in sentencing Wiley, that a harsher sentence was imposed only because he had pleaded not guilty and stood trial, while his co-defendants, who were more deeply involved but had pleaded guilty, were dealt with more leniently. The instant case presents no such exceptional circumstance."[7]

In the case of United States v. Wiley to which Judge Sobeloff refers, Judge Schnackenberg concluded the opinion of the Seventh Circuit as follows:

"Our part in the administration of federal justice requires that we reject the theory that a person may be punished because in good faith he defends himself when charged with a crime, even though his effort proves unsuccessful. It is evident that the punishment imposed by the district court on Wiley was in part for the fact that he had availed himself of his right to a trial, and only in part for the crime for which he was indicted.

"For these reasons we set aside the three years' sentence imposed and re-imposed by the district court on Wiley and we remand this case to that court for a proper sentence not inconsistent with the views herein expressed."

**6.** See Price v. United States, 5 Cir. 1953, 200 F.2d 652, 654.

**7.** Several other courts have expressed the view that there may be an abuse of discretion in the imposition of a sentence.

See Leach v. United States, 1965, 122 U.S.App.D.C. 280, 353 F.2d 451, 452; United States v. Cosentino, 7 Cir. 1951, 191 F.2d 574, 575; United States v. Frank, 3 Cir. 1957, 245 F.2d 284, 288.

278 F.2d 500, 504. See also the concurring opinion of Judge Duffy on the same page.

The language of Judge Weinfeld in United States v. Tateo, S.D.N.Y.1963, 214 F.Supp. 560, 567, is peculiarly apropos:

"No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial and to establish guilt by independent evidence should not be exercised under the shadow of a penalty—that if he persists in the assertion of his right and is found guilty, he faces, in view of the Trial Court's announced intention, a maximum sentence, and if he pleads guilty, there is the prospect of a substantially reduced term. To impose upon a defendant such alternatives amounts to coercion as a matter of law." [8]

■ It must be remembered that, at the time of his allocution, Thomas had not been finally and irrevocably adjudged guilty. Still open to him were the processes of motion for new trial (including the opportunity to discover new evidence), appeal, petition for certiorari, and collateral attack. Indeed, appeal is now an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant.[9]

The two "ifs" which the district court presented to Thomas [10] placed him in a terrible dilemma. If he chose the first "if," he would elect to forego all of the above-noted post-conviction remedies and to confess to the crime of perjury, however remote his prosecution for perjury might seem. Moreover, he would abandon the right guaranteed by the Fifth Amendment to choose not to be a witness against himself, not only as to the crime of which he had been convicted, but also as to the crime of perjury. His choice of the second "if" was made after the warning that the sentence to be imposed would be for a longer term than would be imposed if he confessed. From the record, it is clear that an ultimatum of a type which we cannot ignore or approve confronted Thomas. Truly, the district court put Thomas "between the devil and the deep blue sea."

Since Thomas chose the second "if," he did not in fact abandon his Fifth Amendment rights, and he retained unimpaired his post conviction remedies. It may then be argued that he came through his dilemma unscathed. True, he received the maximum sentence, but perhaps the district court already had that in mind, and was simply giving Thomas a last minute chance to repent and thereby to secure a reduction of that sentence.

■ Knowing his complete rectitude of mind (which we confidently assume), the District Judge may have decided that the sentence was not imposed in violation of the Constitution or laws of the United States.[11] Under 28 U.S.C. § 2255, the court is not limited, however, to constitutional or statutory violations. The court

---

8. The subsequent history of that case is also instructive. See United States v. Tateo, S.D.N.Y.1963, 216 F.Supp. 850, reversed in United States v. Tateo, 1964, 377 U.S. 463, see particularly the dissenting opinion at p. 475, n. 5, 84 S.Ct. 1587, 12 L.Ed.2d 448.

9. Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891; Ellis v. United States, 1958, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060; Johnson v. United States, 1957, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593; Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed. 2d 811.

10. "If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial as you did a moment ago, that you participated in this robbery, the Court also must take that into account."

11. Custody "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c) (3), is practically the only ground upon which a federal district court can grant habeas corpus to a state prisoner.

which imposed the sentence can vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States * * * or is *otherwise subject to collateral attack * * *."* (Emphasis added.) As said by Judge Friendly for the Second Circuit in Kyle v. United States, 1961, 297 F.2d 507, 511, n. 1:

> "Section 2255 is not limited to cases where the sentence was imposed 'in violation of the Constitution or laws of the United States' but includes the more general phrase 'or is otherwise subject to collateral attack,' the boundaries of which have not been defined, save, of course, that 'mere error' is not enough."

■ Thomas suffered the consequences for choosing the second "if" (see note 10, supra) in the form of a longer prison term. When Thomas received harsher punishment than the court would have decreed had he waived his Fifth Amendment rights, he paid a judicially imposed penalty for exercising his constitutionally guaranteed rights.[12] Upon that ground alone, we think that his sentence is "subject to collateral attack," and have *little* doubt as to the authority and duty of the district court to vacate the sentence.

■ There seems *no* doubt as to the authority of this Court of Appeals. The Supreme Court has stated in broad language that "We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system." La Buy v. Howes Leather Company, 1957, 352 U.S. 249, 259, 260, 77 S.Ct. 309, 315, 1 L.Ed.2d 290. Supervisory power first appeared as an independent basis of decision in the case of McNabb v. United States, 1943, 318 U.S. 332, 340, 347, 63 S.Ct. 608, 87 L.Ed.

819. In that case, Mr. Justice Frankfurter speaking for the Court said:

> "In the view we take of the case, however, it becomes unnecessary to reach the Constitutional issue pressed upon us. For, while the power of this Court to undo convictions in state courts is limited to the enforcement of those 'fundamental principles of liberty and justice', Hebert v. State of Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270, which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the federal courts is not confined to ascertainment of Constitutional validity. Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force. Moreover, review by this Court of state action expressing its notion of what will best further its own security in the administration of criminal justice demands appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction. Considerations of large policy in making the necessary accommodations in our federal system are wholly irrelevant to the formulation and application of proper standards for the enforcement of the federal criminal law in the federal courts." 318 U.S. at 340–341, 63 S.Ct. at 613.

Again in Fay v. People of State of New York, 1947, 332 U.S. 261, 287, 67 S.Ct. 1613, 1627, 91 L.Ed. 2043, Mr. Justice Jackson wrote for the Court:

> "Over federal proceedings we may exert a supervisory power with greater freedom to reflect our notions of good

12. The language of this sentence is adapted from that employed in a comment note in 66 Yale Law Journal 204, at 220.

policy than we may constitutionally exert over proceedings in state courts, and these expressions of policy are not necessarily embodied in the concept of due process."

It is now well setted that the Courts of Appeals, as well as the Supreme Court, have such supervisory control of the district courts as is necessary to "the administration of criminal justice in the federal courts." [13] That was the first and remains the classic and most familiar ground for the exercise of the supervisory power of the federal appellate courts.[14] This case is peculiarly appropriate for the exercise of our supervisory power.

Under that power, however, we should not go so far as to direct the District Court to impose no more severe sentence than it had intended in the event of a confession of guilt by Thomas.[15] The District Court is in the better position to determine the length of the sentence to be imposed, and that responsibility continues to rest on it alone. The sentence is vacated and the case remanded to the District Court for further proceedings not inconsistent with this opinion.

Vacated and remanded.

13. See McNabb v. United States, 1943, 318 U.S. 332, 340, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819; Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 225, 66 S.Ct. 984, 90 L.Ed. 1181; Fay v. People of State of New York, 1947, 332 U.S. 261, 287, 67 S.Ct. 1613, 91 L.Ed. 2043; Yates v. United States, 1958, 356 U.S. 363, 366, 78 S.Ct. 766, 2 L.Ed.2d 837; Sherman v. United States, 1958, 356 U.S. 369, 380, 78 S.Ct. 819, 2 L.Ed.2d 848; Halwig v. United States, 6 Cir. 1947, 162 F.2d 837, 840; Delaney v. United States, 1 Cir. 1952, 199 F.2d 107, 113, 114; United States ex rel. Sturdivant v. State of New Jersey, 3 Cir. 1961, 289 F.2d 846; United States v. D'Angiolillo, 2d Cir. 1964, 340 F.2d 453, 456; Jones v. United States, 1964, 119 U.S.App.D.C. 284, 342 F.2d 863, 873; Natural Resources, Inc. v. Wineberg, 9 Cir. 1965, 349 F.2d 685, 692; Ford v. United States, D.C.1965, 122 U.S.App.D.C. 259, 352 F.2d 927, 933; Note on "The Judge-Made Supervisory Power of the Federal Courts," 53 Geo. L.J. 1050–1078; Note on "The Supervisory Power of the Federal Courts," 76 Harv.L.Rev. 1656–1667. Compare La Buy v. Howes Leather Co., 1957, 352 U.S. 249, 259, 260, 77 S.Ct. 309, 1 L.Ed.2d 290; Rosen v. Sugarman, 2 Cir. 1966, 357 F.2d 794, 796, 797.

14. The conceptual underpinnings and the source and nature of this supervisory power are well developed in a note in 76 Harvard Law Review 1656–1667 and in a more extensive note in 52 Georgetown Law Journal 1050–1078.

15. See Yates v. United States, 1958, 356 U.S. 363, 366, 367, 78 S.Ct. 766, 2 L.Ed. 2d 837.