STATE of Wisconsin, Plaintiff-Respondent,

v.

Petronilo J. CARRIZALES, Defendant-Appellant.

Court of Appeals

*No. 93–1804–CR. Submitted on briefs August 11, 1994.—Decided January 12 ,1995.*

(Also reported in 528 N.W.2d 29.)

For the defendant-appellant the cause was submitted on the brief of *Frederick B. Hobe* of *Hobe Law Office* of Fort Atkinson.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Paul Lundsten*, assistant attorney general.

Before Dykman, Sundby and Vergeront, JJ.

DYKMAN, J. Petronilo Carrizales appeals from an order denying modification of his terms of probation. Carrizales pled no contest to one count of second-degree sexual assault and was ordered to attend counseling as a condition of probation. Carrizales contends that his Fifth Amendment right against self incrimination was violated because his sex offender treatment program required that he admit committing the sexual assault. We conclude that Carrizales's right against self-incrimination was not violated because his admission of guilt would not incriminate him in a future criminal proceeding. We therefore affirm.

We part company with the dissent at this point. Carrizales has been very specific both in the trial court and here that this is a Fifth Amendment case. His motion was entitled "Petition for Review [of] Sentence and for [a] Temporary Injunction." At his hearing on this motion, he introduced his case as follows:

89

> That's the whole case, question is a very clear one. Can the Division of Corrections penalize a person for denying guilt?
>
> THE COURT: And do you seek then, Mr. Hobe, an Order of the court prohibiting the Department from taking action against Mr. Carrizales solely because of his denial of guilt?
>
> [CARRIZALES'S ATTORNEY]: That's correct, I'm asking for an Injunction against the Department forbidding them to penalize him for exercising . . . his Fifth Amendment [r]ights.

This case was presented and argued in the trial court as a Fifth Amendment case. The trial court's order, the only order from which Carrizales appeals, notes: "And the parties having further stipulated that the petition for review would be treated as a petition to modify conditions of probation . . . ." That order makes three conclusions of law, all based on the Fifth Amendment.

Carrizales's notice of appeal specifically refers to the trial court's order which in turn was based only on the Fifth Amendment. Carrizales's brief to this court presents only Fifth Amendment issues for review. The cases he cites are Fifth Amendment cases, and he opens his brief by saying, "The appeal is founded in the Defendant-Appellant's claim of violation of his Fifth Amendment Rights as stated in the United States Constitution and incorporated into the Constitution of the State of Wisconsin." His brief argues only that he is protected from a feared revocation of probation by the Fifth Amendment.

We will address Carrizales's assertions in this opinion. We are appellate judges, not Carrizales's attorneys. We cannot serve as both advocate and judge.

*State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992). We should not address matters not considered by the trial court. *Vollmer v. Luety*, 156 Wis. 2d 1, 10-11, 456 N.W.2d 797, 802 (1990). When we address issues other than those presented to us, we run the risk of having an excellent discussion of matters that are substantially irrelevant. *Waushara County v. Graf*, 166 Wis. 2d 442, 453-54, 480 N.W.2d 16, 20, *cert. denied*, 113 S. Ct. 269 (1992). We will not develop an appellant's argument. *State v. West*, 179 Wis. 2d 182, 195-96, 507 N.W.2d 343, 349 (Ct. App. 1993), *aff'd*, 185 Wis. 2d 68, 517 N.W.2d 482, *cert. denied*, 115 S. Ct. 375 (1994). Nor should we sift and glean the record *in extenso* to find facts to support an alleged error. *Zintek v. Perchik*, 163 Wis. 2d 439, 482-83, 471 N.W.2d 522, 539 (Ct. App. 1991).

Thus, though we do not accept the conclusions reached by the dissent, we do not address the matters considered in the dissent which stray from the real issue in this case. As the court noted in *Graf*, that discussion is substantially irrelevant. *Graf*, 166 Wis. 2d at 453-54, 480 N.W.2d at 20.

## BACKGROUND

Carrizales was charged with two counts of second-degree sexual assault, contrary to § 948.02(2), STATS. He entered into a plea agreement. In exchange for his plea of no contest, the prosecutor agreed to dismiss one of the counts and recommend probation. The plea agreement further stated that the sentence recommendation would include "counseling as deemed necessary by agent." The trial court withheld Carrizales's sentence and placed him on probation for a period of three years. As a condition of probation, Carrizales was to

receive "any counseling as deemed appropriate by [his] probation agent."

During the next one-and-one-half years, Carrizales complied with his probationary conditions. However, in May 1993, he was terminated from his treatment program because he refused to admit that he committed the sexual assault. In June 1993, Carrizales filed a "Petition for Review [of] Sentence and for [a] Temporary Injunction" asking the trial court to prohibit the Department of Corrections (DOC) from revoking his probation for his refusal to admit guilt. Carrizales claimed that DOC had added a specific condition of probation not ordered by the trial court. Moreover, he argued that his refusal to admit guilt resulted in the imposition of a penalty and violated his Fifth Amendment right against self-incrimination.

The trial court treated Carrizales's postconviction motion as a motion for modification of the terms of probation. The court denied the motion concluding that Carrizales's refusal to admit that he committed the sexual assault did not violate his Fifth Amendment right against self-incrimination because he was under no threat of any new criminal consequences. Carrizales appeals.

## STANDARD OF REVIEW

Whether a condition of probation violates a defendant's constitutional rights is a question of law which we review *de novo. State v. Miller*, 175 Wis. 2d 204, 208, 499 N.W.2d 215, 216 (Ct. App. 1993). Thus, we decide such questions without deference to the decision of the trial court. *Id.*

## CONDITIONS OF PROBATION

Carrizales argues that because his right against self-incrimination persists beyond trial and after a judgment of conviction is entered, he cannot be required to admit guilt. He also argues that counseling is an improper condition of probation when it is interpreted to include a forced confession. He contends that "the enforcement of a confession will be [of] no value to anyone other than a sense of satisfaction on the part of the probation officer." We disagree.

■

Section 973.09(1)(a), STATS., grants broad discretion to a trial court at sentencing and authorizes it to impose upon a probationer "any conditions which appear to be reasonable and appropriate." Such conditions must serve two goals: rehabilitation, and protection of the state and community interest. *Miller*, 175 Wis. 2d at 208, 499 N.W.2d at 216. Indeed, the trial court may order specialized treatment as a condition of probation. *State v. Lynch*, 105 Wis. 2d 164, 168, 312 N.W.2d 871, 874 (Ct. App. 1981).

■

The conditions imposed upon a probationer may also implicate constitutional rights provided "they are not overly broad and are reasonably related to the defendant's rehabilitation." *Miller*, 175 Wis. 2d at 208, 499 N.W.2d at 216 (citation omitted). Thus, in *Miller*, we determined that a condition of probation that prohibited the defendant from making telephone calls to any female with the exception of family members did not violate the defendant's First Amendment right to free association. *Id.* at 210-12, 499 N.W.2d at 217-18. And, in *Edwards v. State*, 74 Wis. 2d 79, 84-85, 246 N.W.2d 109, 111-12 (1976), the supreme court determined that a condition of probation that prohibited the

defendant from contacting any of her co-defendants did not violate her First, Ninth and Fourteenth Amendment rights because it was reasonably related to her rehabilitation and was not overly broad.

The Fifth Amendment of the United States Constitution, in pertinent part, provides: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. This provision guarantees that a defendant may refuse to answer questions "where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

In *Murphy*, the defendant was placed on probation after he pled guilty to a sex-related charge. *Id.* at 422. As a condition of probation, he was required to participate in a sex offender treatment program and was directed to be truthful with his probation officer "in all matters." *Id.* After Murphy admitted to his probation officer that he had previously raped and murdered someone, he was charged with the murder. *Id.* at 423-25.

The Supreme Court held that a defendant does not lose his or her right against self-incrimination after being convicted of a crime, notwithstanding the fact that the defendant has been imprisoned or is on probation at the time the incriminating statements are made. *Id.* at 426. However, the Court stated that questions put to a probationer that are relevant to his or her probationary status and pose no realistic threat of incrimination in a separate criminal proceeding do not violate the Fifth Amendment. *Id.* at 435. And, the State may validly insist that the defendant respond to incriminating questions as long as it recognizes that

the required answers may not be used in a subsequent criminal proceeding. *Id.* at 426.

Thus, if a probationer is forced to answer questions relating to pending charges or face revocation of probation, the probationer must answer the questions as long as he or she is informed that such answers may not be used against the probationer in a subsequent criminal proceeding except for purposes of impeachment or rebuttal. *State v. Evans,* 77 Wis. 2d 225, 235-36, 252 N.W.2d 664, 668-69 (1977). However, incriminating statements may be used against a parolee in a revocation proceeding because such hearings are fundamentally different from a criminal proceeding and thus no Fifth Amendment right attaches. *State ex rel. Struzik v. DHSS,* 77 Wis. 2d 216, 222-23, 252 N.W.2d 660, 662-63 (1977).

Requiring Carrizales to admit that he committed the sexual assault does not pose a threat of incrimination in a separate criminal proceeding. He has already been convicted of second-degree sexual assault. His statements could not be used for anything other than rehabilitative purposes. Contrary to Carrizales's assertions, the reason for this admission is not so DOC will experience a sense of satisfaction. Rather, counselors view this admission as a first step toward rehabilitation. Were DOC seeking an admission for its own sake, there would be no need for the requirement that Carrizales's admission be "heartfelt." Given the fact that untreated sex offenders pose a risk in the community, Carrizales's refusal to admit guilt makes it difficult for his probation officer to ensure the safety of the community. Thus, this condition does not violate Carrizales's right against self-incrimination and satisfies the twin

goals of probation: rehabilitation and safety to the community. *Miller*, 175 Wis. 2d at 208, 499 N.W.2d at 216.

We also reject Carrizales's reliance on *Scales v. State*, 64 Wis. 2d 485, 219 N.W.2d 286 (1974), and *Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966), since these cases are readily distinguishable. Both cases address the propriety of a sentencing judge in considering a defendant's continued assertion of innocence when imposing a sentence. In *Scales*, the sentencing judge imposed a prison sentence because the defendant refused to admit guilt. *Scales*, 64 Wis. 2d at 488, 219 N.W.2d at 289. The court concluded that this was a violation of the defendant's Fifth Amendment rights. *Id.* at 495-97, 219 N.W.2d at 292-93. And in *Thomas*, the court also held that at sentencing, a defendant could not be compelled to admit guilt or be subject to a greater sentence. *Thomas*, 368 F.2d at 946. The supreme court, however, has limited *Scales* to situations where the trial court bases its sentencing decision *exclusively* on the defendant's refusal to admit guilt. *State v. Baldwin*, 101 Wis. 2d 441, 456-58, 304 N.W.2d 742, 750-51 (1981). A trial court does not erroneously exercise its discretion when it considers a defendant's refusal to admit guilt as one of a number of factors at sentencing, so long as the court does not give one factor undue weight. *Id.* at 457-59, 304 N.W.2d at 751-52.

In contrast, Carrizales is being asked to admit that he committed a crime in which he has already entered a no contest plea. While Carrizales may suffer a loss of liberty because of his refusal to comply with his conditions of probation, this is the bargain to which he agreed. And, that his sentence was withheld as

opposed to imposed and stayed, does not persuade us to adopt a contrary result. Either way, Carrizales would be facing a loss of liberty. If probation is revoked and Carrizales is sentenced, the trial court may not base its sentence exclusively upon Carrizales's refusal to admit guilt. *Id.*

Carrizales has no right against self-incrimination with regard to admitting the facts surrounding this conviction. Thus, if Carrizales continues to refuse to admit his guilt as part of a mandatory treatment program, DOC may revoke his probation for that refusal.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). First, it is clear that Carrizales has not violated a condition of probation. Carrizales's "no contest" plea was bargained with the district attorney. The Criminal Case Settlement includes the requirement, "counseling as deemed necessary by agent." The judgment of conviction imposes the following as a condition of probation: "Defendant to receive any counseling as deemed appropriate by probation agent." The probation agent referred Carrizales to the Jefferson County Human Services Department's (HSD) Sex Offender Program. However, HSD rejected him because he continued to deny his guilt and refused to confess that he had sexual contact with his fourteen-year-old stepdaughter. The judgment did not require as a condition of probation that Carrizales give up his long and firmly held refusal to admit that he was guilty of the offense charged. I conclude that this case is controlled by *State v. Sepulveda*, 119 Wis. 2d 546, 350 N.W.2d 96 (1984), on the resentencing question and that *State v. Jacobsen*, 471 N.W.2d 427 (Neb. 1991), is

persuasive authority on the question of revocation of Carrizales's probation.

In *State v. Sepulveda*, the court held that the modification of Sepulveda's terms of probation was not a revocation. The supreme court stated:

> We hold that this modification is *not* a revocation. It is instead a very limited extension of the power to modify the terms of probation and should only be utilized by the courts in cases such as the instant one, *where the judge's intent behind the grant of probation is completely frustrated due to the failure of a primary condition.*

119 Wis. 2d at 557, 350 N.W.2d at 101-02 (second emphasis added).

That is what this case is about. The trial court's intention behind the grant of probation to Carrizales has been frustrated due to the failure of the primary condition—treatment.

In *Sepulveda*, the trial court placed the defendant on probation on condition that he voluntarily admit himself to the Mendota Mental Health Institute for intensive inpatient therapy. However, Mendota would not admit him because he refused to admit guilt. The supreme court held that Mendota's refusal to admit Sepulveda was a "new factor" which frustrated the judge's intent behind the grant of probation. *Id.* at 560-61, 350 N.W.2d at 104. The supreme court concluded that the trial court had authority to modify Sepulveda's sentence without violating his right to be free from double jeopardy. *Id.* at 567, 350 N.W.2d at 106-07.

The rule in Wisconsin is that it is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known. *State v. Macemon*, 113 Wis. 2d 662, 668, 335 N.W.2d 402, 406 (1983); *see also* Jeffrey Kassel, Comment, *Sentence*

*Modification by Wisconsin Trial Courts*, 1985 WIS. L. REV. 195, 205. Under *Sepulveda*, Carrizales's expulsion from the county program is a new factor requiring resentencing.

"New factor" is defined in *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69, 73 (1975):

> [T]he phrase "new factor" refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

Whether a set of facts fits the legal standard for "new factors" is a question of law. *State v. Hegwood*, 113 Wis. 2d 544, 547, 335 N.W.2d 399, 401 (1983). An appellate decision that defendant has alleged a new factor would compel the trial court to consider the new factor, but still allow it to exercise its discretion in resentencing the defendant. Comment, 1985 WIS. L. REV. at 218. Thus, appellate review of whether certain facts constitute "new factors" entails little interference with trial court sentencing discretion. *Id.*

In *Sepulveda*, the trial court concluded that defendant's nonacceptance at Mendota constituted "identifiable factual data not known to the trial judge at the time of the original sentencing proceedings." 119 Wis. 2d at 550, 350 N.W.2d at 99. Here, the trial court did not know what counselling the probation officer would require. However, the trial court did not require as a condition of probation that Carrizales admit guilt. Such a requirement would be tantamount to a forced guilty plea impermissible under *Scales v. State*, 64 Wis. 2d 485, 497, 219 N.W.2d 286, 293 (1974).

The *Sepulveda* court observed that the trial judge did not base his decision to incarcerate the defendant on defendant's refusal to acknowledge guilt. 119 Wis. 2d at 556 n.5, 350 N.W.2d at 102. The court, therefore, distinguished the case from *Scales v. State* upon which Carrizales relies. The court said that whether or not Sepulveda could accept responsibility for his actions was irrelevant since the judge did not choose to incarcerate him based upon his denial, but rather upon the fact that he was unable to be confined at Mendota. *Sepulveda*, 119 Wis. 2d at 557 n.5, 350 N.W.2d at 102.

It was not a condition of Carrizales's probation that he admit his guilt; it was the termination of counselling which frustrated the trial court's purpose in granting probation. Thus, whether Carrizales has a Fifth Amendment right to refuse to admit his guilt is irrelevant. The majority's concentration on this issue caused it to miss the real point of this case.

I conclude that expulsion of Carrizales from the HSD program for sex offenders because he refuses to admit guilt is a "new factor" which requires the trial court to reconsider Carrizales's sentence. Contrary to HSD, an addicted person may benefit from counselling which does not demand an admission of guilt. AA has a cliche which admonishes the beginner: "Bring the body and the mind will follow." That cliche is applicable to any program which treats an addiction of any kind. HSD apparently has concluded that Carrizales will never break through his denial.[1] Carrizales claims he has the best of reasons for denial—he is innocent.

I conclude that the "new factor" which frustrates the counselling-condition of probation requires that we reverse the order appealed from and direct the trial

---

[1] HSD placed Carrizales in a two-year group. It discharged him after slightly more than one year.

court to resentence Carrizales. Perhaps the trial court will conclude, as I do, that Carrizales does not need counselling for a sexual disorder. There is no evidence that Carrizales presents a danger to society as a repeat sex offender. He has never been previously charged with or convicted of a sex-related offense. There is nothing in his history to suggest that he has a sexual disorder. However, resentencing is a chancy matter for Carrizales. Carrizales has demonstrated that he is willing to take a chance that the court will find a way to meet its objective in granting probation without requiring that he give up his insistence on his innocence. He has also demonstrated that rather than admit guilt, he is willing to be tried.

After the presentence investigation (PSI) report was filed, Carrizales moved to withdraw his no contest plea. The report made clear that he would be allowed probation only if he abandoned his claim of innocence. The trial court, however, did not follow the PSI report's recommendation. Further, in the plea agreement, the prosecutor had recommended three years probation with such jail time as the PSI report would recommend. However, the report did not recommend jail time but recommended that Carrizales be sentenced to a medium term of confinement in prison. The trial court denied Carrizales's motion to withdraw his plea but gave him the right at the time of sentencing to respond to the PSI recommendation in any way he deemed appropriate.

At the sentencing hearing, Toni's mother, Susan, contradicted her daughter's preliminary hearing testimony that Carrizales had sexual contact with Toni. She testified that Carrizales had gone into Toni's room to discuss conflicts between Toni and her. She and her daughter conflicted on a daily basis about discipline.

101

When Susan walked into Toni's bedroom, Carrizales was at the foot of the bed and Toni was lying on the bed covered with a sleeping bag.

Susan further testified that the relationship between Toni and her husband was good until he began to side with her on matters of discipline. She was asked the following question and gave the following answer:

Q. How did she express her dislike?

A. She told me she wanted him out of the house and whatever it would take she would do that because she didn't like the way he disciplined her.

Susan said she was prepared to testify on behalf of her husband at trial but the trial was cancelled and her husband entered the "no contest" plea. She testified that the trial was cancelled "because I thought that my daughter and my relationship was damaged enough already and I was hoping for a reconciliation between us."

At the sentencing hearing, Susan was asked the following questions and gave the following answers:

Q. In the statement that Toni gave the Pre-Sentence investigator he states that you then came into her room because her hearing aid squealed.

A. No, I don't remember hearing it squeal.

. . . .

Q. In the Pre-Sentence Report the investigator reports Toni as stating you saw [Carrizales] molesting her when you entered her room.

A. I saw nothing.

102

Counsel advised the court that Toni had been removed by HSD from Carrizales's home and placed in a foster home.

Carrizales also testified. He was asked to explain his admission to the Pre-Sentence Investigator that he may have touched Toni's breasts accidentally. He replied:

> [H]e asked me if when I went into the room was she awake or not, and he . . . said, explain how you woke her up. I said: Well, I shook her, I had to touch her to wake her up because she was asleep.

Carrizales's counsel argued: ·

> Mr. Carrizales is in the awkward position of being pressured both by Probation and by Human Services to make a confession, otherwise they're not recommending probation for him. It's very difficult for any person to make a confession if they truly believe in their own innocence.

Carrizales was offered a plea agreement he could not refuse, even if innocent—three years probation with some jail time as opposed to a possible twenty years imprisonment and a $20,000 fine.[2] The court did not inform him, and may not have known, that he would be required as a condition of counselling to admit guilt.

There is nothing in Carrizales's background to label him, as did HSD's evaluators, "an untreated sex offender." He has no other convictions for sex-related offenses. The picture of Carrizales portrayed by the evaluators and the PSI report is of a law-abiding, hard-

---

[2] Carrizales was originally charged with two separate counts of second-degree sexual assault of a child, contrary to § 948.02(2), STATS. Presumably, if Carrizales had not agreed to the plea bargain, the State would have tried him on both counts.

working young man. They report that his family "continues to enable his cognitive distortions." In the support groups I am familiar with, that is called "support," without which an addicted person is unlikely to recover. The evaluators' conclusion that Carrizales "is likely to sexually offend again" is a grossly unfair distortion of Carrizales's personality and experience. He has no previous record except a Texas OWI conviction. The evaluators concede that Carrizales is "quite immature" when discussing issues of a sexual nature. He giggles, he blushes, and he makes inappropriate joking sexual comments. He does not present as a "sexual predator."

I agree with HSD that therapy for an addiction is of little use unless the addicted person can break through his or her denial. Denial is the greatest stumbling block to recovery. However, I have seen a practicing alcoholic finally shed his denial after treatment in thirteen facilities. It can happen. It is axiomatic, however, that to recover, the addicted person must be capable "of grasping and developing a manner of living which demands rigorous honesty." ALCOHOLICS ANONYMOUS BIG BOOK 58 (3d ed. 1976). The founders of AA said to the practicing alcoholic, "with all the earnestness at our command, we beg of you to be fearless and thorough from the very start." *Id.* The requirement of "rigorous honesty" is the bedrock of all addiction-treatment programs.

What if Carrizales really is innocent?[3] HSD demands that he lie. That is not consistent with any treatment modality I am aware of.

---

[3] *See, e.g.,* B. ANTHONY MOROSCO, THE PROSECUTION AND DEFENSE OF SEX CRIMES § 9.02[3] (1994) (discussing a 1988 study which indicated that two-thirds of the allegations of child sexual abuse were "unfounded"); ASSOCIATION OF FAMILY AND CONCILIA-

I agree, however, that the courts have no business prescribing the details of treatment programs. The trial court did not impose the "confession" condition on Carrizales; it simply required him "to receive any counseling as deemed appropriate by probation agent." I note that the probation agent who reviewed Carrizales's case decided to "require treatment at another agency."

TION COURTS RESEARCH UNIT, THE SEXUAL ABUSE ALLEGATIONS PROJECT: FINAL REPORT, Executive Summary (1988) (determining that in thirty-three percent of the cases alleging sexual abuse, the child was not believed to have been abused, and in seventeen percent of the cases, no decision could be reached; fourteen percent of the allegations were considered to be deliberately false); Paul R. Lees-Haley, *Innocent Lies, Tragic Consequences: The Manipulation of Child Testimony*, TRIAL, Apr. 1988, at 37, 38 (reporting that in 1983, the National Center on Child Abuse and Neglect stated that "over 65 percent of all reports of suspected child maltreatment proved to be unfounded"); *see also* Jean Montoya, *Something Not So Funny Happened on the Way to Conviction: The Pretrial Interrogation of Child Witnesses*, 35 ARIZ. L. REV. 927, 933 (1993) (maintaining that "[s]ocial science evidence of children's suggestibility indicates that persistent pretrial interrogation of child witnesses can impair the search for truth in litigation," and that "preschool children can be manipulated by interviewers to level false accusations"); Lee Coleman and Patrick E. Clancy, *False Allegations of Child Sexual Abuse: Why is it happening? What can we do?*, CRIMINAL JUSTICE, Fall 1990, at 14, 46 (arguing that many children *"learn to believe* they were abused, as a result of ongoing interviews by investigators and therapists") (emphasis added); John R. Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews*, 62 WASH. L. REV. 705, 721 (1987) (claiming that "procedures used to get a child to speak can be a source of falsehood as well as truth").

The record shows that if the trial court does not modify Carrizales's conditions of probation and he continues to assert his innocence, the State may revoke his probation. In *State v. Jacobsen*, the Nebraska Supreme Court held that evidence that the treatment facility would not accept defendant was insufficient to support a finding that defendant violated probation. 471 N.W.2d at 429-30. The state revoked defendant's probation because he did not complete an alcoholism evaluation and treatment program but joined AA and remained sober for twenty-three months. A Veterans' Administration psychiatrist concluded that Jacobsen should be allowed to continue his AA involvement and did not need inpatient treatment. The supreme court reversed the district court's order affirming revocation of Jacobsen's probation. The court concluded that this evidence did not support a finding that Jacobsen had violated a condition of probation.

The evidence against Carrizales does not support a finding that he violated a condition of probation when he refused to admit guilt. He did not withdraw from HSD's program; he was not expelled for misconduct, but rather, for his stubborn insistence that he is innocent.

I conclude that, consistent with *Sepulveda*, Carrizales's expulsion from the sex offender program is a new factor requiring resentencing. I therefore respectfully dissent.