DUGAN, J.
¶1 Marquis D. Walls appeals a judgment of conviction, entered on a jury's verdict, for attempting to flee or elude a traffic officer.[1] He also appeals the denial of his postconviction motion.
¶2 On appeal, Walls contends that when he exercised his right of allocution at sentencing, the trial court violated his Fifth Amendment right against self-incrimination by pressuring him to admit guilt and then used his failure to do so to impose a harsher sentence.
¶3 We conclude that the record establishes the following: (1) prior to sentencing Walls had already admitted that he was guilty of fleeing the police; (2) the trial court's questions were directed towards obtaining information about Walls' character; (3) the trial court properly considered the Gallion[2] factors in sentencing Walls; and (4) Walls did not establish that the trial court imposed a harsher sentence because he failed to explain why he fled the police.[3] Therefore, we affirm.
¶4 The following facts provide context for the issues raised in this appeal. We refer to additional facts in the discussion.
BACKGROUND
¶5 The State charged Walls with one count of armed robbery, as party to a crime, and one count of attempting to flee or elude a traffic officer. The State alleged that the armed robbery that occurred on March 20, 2015, involved two suspects and that the attempt to flee occurred on March 24, 2015. The victim told police that the vehicle involved in the armed robbery was a Pontiac Grand Am or Grand Prix.
¶6 The armed robbery victim recognized one of the armed robbery suspects and knew his street name was "Bam Bam." Without the knowledge of the police, the victim decided to help the police by locating Bam Bam. On March 22, 2015, the victim asked a relative who knew Bam Bam to arrange a drug transaction with Bam Bam. The relative called a contact, and the contact agreed to arrange the drug transaction for the following day, March 23, 2015.
¶7 On March 23, 2015, the victim watched the drug transaction from the living room window of his relative's home. The victim saw a black Dodge with tinted windows pull up in front of his relative's home with Bam Bam as a passenger. The victim's relative and the contact, whom the victim recognized as the other armed robbery suspect, exchanged money for drugs. After the transaction was completed, the relative provided the victim with the license plate number of the Dodge. The victim then provided the license plate number to a Milwaukee Police Department detective who used Wisconsin Department of Transportation records to determine that Walls was an owner of the Dodge.
¶8 Using that information, the detective assembled a photo array that included a photograph of Walls. At approximately noon on March 23, 2015, the detective showed the victim the photo array. The victim selected Walls' photograph, indicating that he was one of the armed robbers.
¶9 Later during the detective's shift, he happened to observe the Dodge vehicle with Walls' license plate. The detective also recognized Walls as he was approaching the driver's side door of the Dodge.
¶10 The detective stopped the Dodge and radioed for uniformed officers in marked squad cars for backup assistance to arrest Walls for the armed robbery. One of the responding uniformed officers approached Walls' vehicle to confirm his identity and arrest him for the armed robbery. After the officer had reviewed Walls' license, he asked Walls to step out of the car. Walls asked, "Why?" The officer said that they "had something to talk about." Walls then shifted the Dodge into drive and drove away at a high rate of speed. The police pursued Walls as he continued to drive above the speed limit for three and one-half miles on city streets and freeways. For part of that time, Walls drove with the vehicle's headlights off and he ignored stop signs and traffic signals. Eventually, Walls pulled over and the police arrested him.
¶11 The case proceeded to a jury trial, and, as previously noted, the jury found Walls not guilty of the armed robbery charge and guilty of the fleeing charge. The case was set for sentencing.
¶12 During sentencing arguments, trial counsel stated, "As far as the fleeing, pretty much early on we knew what that situation was going to be. It was on tape. My client explained to me he knows he was guilty for the fleeing." Trial counsel then went on to describe Walls' character as positive. Trial counsel then told the trial court, "I think part of the reason why he fled was out of fear that he could be going back to jail or prison for the drugs or for any reason."
¶13 After trial counsel concluded with statements about Walls' positive character and why Walls may have chosen to flee, the trial court asked Walls what he wanted to say. Walls exercised his right of allocution and responded, "I just want to say that I do accept my consequences." During Walls' allocution, the trial court asked Walls three times why he fled police. Walls provided the following answers: (1) "I was scared"; (2) "I have no reason"; and (3) "I have no excuse." The trial court asked Walls why he was scared, and Walls responded, "I am on supervision," and "I am not supposed to have police contact." The trial court also asked Walls why he went to the drug deal set up by the armed robbery victim. Walls said, "I didn't know it was a drug deal."
¶14 The State requested that the trial court impose the maximum sentence of three and one-half years, consecutive to a nine-year sentence that had been imposed after revocation of his extended supervision.[4] Walls' trial counsel asked the trial court to impose a three-year concurrent sentence. The trial court sentenced Walls to one and one-half years of initial confinement and two years of extended supervision, to be served consecutive to Walls' previously imposed nine-year reconfinement sentence. During sentencing, trial counsel did not object to any of the trial court's questions or remarks.
¶15 Walls filed a postconviction motion seeking resentencing claiming that at sentencing, the trial court violated his Fifth Amendment right to refrain from self-incrimination by attempting to coerce him into admitting his guilt, and then relied on Walls' failure to do so to impose a harsher sentence. The trial court denied the motion in a written decision. Walls appeals.
DISCUSSION
¶16 On appeal, Walls contends that when he exercised his right of allocution at sentencing, the trial court violated his Fifth Amendment right against self-incrimination by pressuring him to admit guilt and then used his failure to do so as "a basis to impose the maximum prison sentence." The State asserts that Walls forfeited his Fifth Amendment claim by not making contemporaneous objections during sentencing. Alternatively, the State asserts that: (1) the trial court did not ask Walls to admit his guilt; (2) the trial court's questions did not violate Walls' Fifth Amendment rights; (3) even if the trial court's questions violated Walls' right to refrain from self-incrimination, the trial court properly sentenced Walls, based on multiple factors; and (4) Walls did not show that the trial court imposed a harsher sentence as a result.
I. Assuming that Walls Did Not Forfeit His Fifth Amendment Claim, We Conclude that the Trial Court Did Not Violate Walls' Fifth Amendment Right to Refrain from Self-Incrimination and Properly Exercised its Sentencing Discretion
A. Standard of Review and Applicable Law
¶17 In addressing this appeal, we assume that Walls did not forfeit his Fifth Amendment claim and, therefore, consider his claims on their merits.
¶18 Sentencing lies within the trial court's discretion, and our review is limited to determining if the trial court erroneously exercised its discretion. See State v. Gallion , 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. "When the exercise of discretion has been demonstrated, we follow a consistent and strong policy against interference with the discretion of the trial court in passing sentence[.]" See State v. Stenzel , 2004 WI App 181, ¶7, 276 Wis. 2d 224, 688 N.W.2d 20.
¶19 Wisconsin affords defendants a statutory right of allocution, under which a defendant has the opportunity at sentencing "to make a statement with respect to any matter relevant to the sentence." WIS. STAT. § 972.14(2) (2015-16)[5] ; see also State v. Greve , 2004 WI 69, ¶¶34-35, 272 Wis. 2d 444, 681 N.W.2d 479. In fact, in exercising this right of allocution, a defendant may, in the hope of obtaining a more lenient sentence, waive the right against self-incrimination "and acknowledge his guilt and express his contrition and remorse." Scales v. State , 64 Wis. 2d 485, 496, 219 N.W.2d 286 (1974).
¶20 However, "[a]mong the rights granted a defendant in a criminal proceeding is the Fifth Amendment privilege against self-incrimination."[6] State v. Mark , 2006 WI 78, ¶16, 292 Wis. 2d 1, 718 N.W.2d 90. This right, set forth in the United States Constitution as well as article I, section 8 of the Wisconsin Constitution, provides that a person cannot be compelled to be a witness against himself or herself in a criminal case. See U.S. CONST . amend. V. This constitutional protection against self-incrimination continues through sentencing. State v. Alexander , 2015 WI 6, ¶24, 360 Wis. 2d 292, 858 N.W.2d 662. Indeed, a compelled self-incriminating statement is an improper factor that should not be considered at sentencing. See id.
¶21 Under Gallion , trial courts must specify the objectives of the sentence on the record. Id ., 270 Wis. 2d 535, ¶40. The objectives "include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." Id . Trial courts must also "by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives."Id ., ¶46. In seeking to fulfill the sentencing objectives, the trial court must consider the primary sentencing factors of "the gravity of the offense, the character of the defendant, and the need to protect the public." State v. Ziegler , 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76. The trial court may also consider a wide range of other factors concerning the defendant, the offense, and the community. See id. The trial court has discretion to determine the factors that are relevant in fashioning the sentence and the weight to be given to each factor. Stenzel , 276 Wis. 2d 224, ¶16.
¶22 If the trial court "actually relies on clearly irrelevant or improper factors," it has erroneously exercised its discretion. Alexander , 360 Wis. 2d 292, ¶17 (citation omitted). The defendant "bears the burden of proving, by clear and convincing evidence, that the [trial] court actually relied on irrelevant or improper factors." Id. In our review of a sentencing challenge, based on the alleged use of improper factors, we examine the entire sentencing transcript and "look to the [trial] court's articulation of its basis for imposing the sentence." See id. , ¶29. "Moreover, when we review a sentence, we still look to the entire record, including any postconviction proceedings and to the totality of the court's remarks." See Stenzel , 276 Wis. 2d 224, ¶9.
B. During the Jury Trial and at Sentencing, Walls Admitted He Was Guilty of Fleeing
¶23 In contending that the trial court's exchange with him during sentencing violated his Fifth Amendment right not to incriminate himself, Walls ignores the fact that he had admitted that he was guilty of fleeing. Specifically, during trial counsel's opening and closing statements, and his sentencing argument, Walls admitted that he had fled from the police.
¶24 In his opening statement, trial counsel told the jury that Walls was "not guilty on the armed robbery, but there will be evidence shown with regard to the fleeing that will lead you to the conclusion that may not be favorable to Mr. Walls, and Mr. Walls will accept that ." (Emphasis added.) In the closing argument, trial counsel asked the jury to conclude that Walls fled police not because he committed the armed robbery, but because he had been present at the drug deal set up by the victim of the armed robbery:
[O]ne reason he may have fled is that drug transactions are illegal, because it is an illegal activity. If that is the case, that is the reason he might have fled. Because he might have said, hey, you know, that was a drug deal, I helped him out, I might get in trouble for that one. He panicked and took off.
(Emphasis added.) Trial counsel then told the jury that "I don't want to take up your time and think you are fools in terms of the fleeing in the decision you come to. I understand that one ." (Emphasis added.)
¶25 Additionally, in his initial remarks at sentencing, trial counsel reiterated Walls' admission that he was guilty of fleeing stating,
[Walls] wants me to tell you the reason he went to trial is because-it was his position that he was not guilty on the armed robbery. The jury did find him not guilty on that.
As far as the fleeing, pretty much early on we knew what that situation was going to be. It was on tape. My client explained to me he knows he was guilty for the fleeing.
(Emphasis added.) Thus, before he was questioned by the trial court at sentencing, Walls had admitted several times during the proceedings that he was guilty of fleeing an officer. Walls' prior admissions that he was guilty of the fleeing charge distinguishes his situation from that presented in the cases that he cites. See, e.g. , Scales , 64 Wis. 2d at 496 (holding that where a defendant refuses to admit his guilt, even after jury returns a guilty verdict, that fact alone cannot be used to justify incarceration rather than probation).
C. The Trial Court's Questions Were Directed Toward Obtaining Information about Walls' Character
¶26 Walls asserts that the trial court pressured him to admit guilt. However, our review of the record clearly establishes that the trial court's questions were directed toward obtaining information about Walls' character-not whether he was guilty of fleeing. As we concluded above, Walls admitted he was guilty of fleeing and the trial court knew that he admitted fleeing.
¶27 Trial counsel concluded his sentencing arguments by highlighting Walls' positive character and explaining that Walls may have fled out of fear that he could go back to jail or prison for the drugs. In light of his argument regarding Walls' positive character, trial counsel then asked that the trial court impose a concurrent sentence with Walls' previously imposed reconfinement sentence.
¶28 At the conclusion of trial counsel's argument, the trial court asked Walls if he wanted to say anything. Walls exercised his right of allocution and stated, "I just want to say that I do accept my consequences." It was at this point that the trial court began to ask Walls why he fled. The trial court did not need to ask Walls if he was guilty of fleeing because Walls already admitted that he fled from police. The trial court was trying to determine Walls' character in light of trial counsel's argument that Walls was a productive, positive member of the community, a fact that could be a mitigating factor in sentencing.
¶29 The record further reflects that the trial court was trying to understand why a person who was a productive, positive member of the community, and was doing well on extended supervision, would flee. A reasonable explanation for fleeing could have potentially convinced the trial court that Walls truly was a productive, positive member of the community and that the act of fleeing was done in a moment of panic.
¶30 As the trial court began to explain the sentence it was imposing, it addressed the serious nature of the fleeing. At that point it noted:
I have no idea why he is running. I don't buy his excuse at all that he was running because he was afraid of what his [parole officer] might do. Especially when he tells me, and [trial counsel] represents to me, that he was doing okay on extended supervision because it was the only charge in the reconfinement hearing. So he had nothing to fear from his [parole agent].
Walls understood that the trial court was addressing his character because he asked, "Your Honor, may I speak as to my character?" The trial court continued addressing Walls' character noting that he was "apparently employed" and that "I know he was a member of the gang in Racine."
¶31 The trial court then asked Walls, "Now, what do you want to tell me about your character?" Walls responded, "Your Honor, I have never had problems with working.... I am not a gang member, nor was I ever. Up until this point when I came to jail this time I was fine." In response, the trial court asked, "Then why did you run? Why did you run from the cops if you were fine and if you were doing nothing wrong? You were a law abiding citizen, why would you take the cops on that long chase?" Walls responded, "I have no excuse." The trial court then stated:
Well, I chose to believe that the reason you did it is because you were afraid of something that you had done either on extended supervision, in violation of your extended supervision, or you had violated the law.... I know you were involved in at least one drug deal.... Until you can give me a logical explanation as to why you fled from the cops, I don't know.
The trial court concluded by noting the serious nature of the fleeing, the need to protect the community and Walls' "lack of character." It then stated that a prison sentence was appropriate.
¶32 The record clearly reflects that the trial court was not attempting to get Walls to admit that he fled police-Walls had already admitted he fled. Trial counsel argued the trial court should consider Walls' good character as a mitigating factor. The trial court's asking Walls why he fled was an attempt by the trial court to determine whether Walls was a person of good character. As the trial court stated, until Walls could give it a logical explanation for why he fled, the trial court believed that the reason Walls fled was that he violated the terms of his extended supervision or violated the law. Either violation reflected on his character.
¶33 For those reasons, we conclude that when the trial court asked Walls to explain why he fled from police, the trial court was addressing the issue of Walls' character, not trying to get him to admit his guilt.
D. The Trial Court Properly Applied the Gallion Factors in Imposing the Sentence
1. The Trial Court Did Not Consider Any Improper Factors when Sentencing Walls
¶34 Walls argues that the trial court imposed a harsher sentence because he refused to confess guilt and express remorse. However, as we concluded earlier, Walls had admitted that he was guilty of fleeing and the trial court's questions were directed towards obtaining information that was relevant to Walls' character and determining the appropriate sentence in light of that character. For those reasons, we concluded that the questions were proper.
2. The Trial Court Properly Exercised Its Discretion in Applying the Gallion Factors
¶35 During sentencing, the trial court properly applied the Gallion factors. First, the trial court stated that one of its objectives in sentencing Walls was both specific and general deterrence, which is a proper objective to be considered in sentencing. See Gallion , 270 Wis. 2d 535, ¶¶40, 46. The trial court said that it needed to send "a message to Mr. Walls, and everybody else in the community, that you cannot engage in the conduct that he did ... without consequences." The trial court then addressed the three primary factors that must be considered in sentencing a defendant. See Ziegler , 289 Wis. 2d 594, ¶23 (stating that the trial court must consider the primary sentencing factors of "the gravity of the offense, the character of the defendant, and the need to protect the public").
¶36 In addressing the first primary sentencing factor-the gravity of the offense-the trial court stated that the conviction for fleeing was a serious offense involving an "egregious fleeing. It [was] a long chase" through residential neighborhoods, at high speeds, with no attention paid to stop signs, red traffic signals, or the possibility of injury to both citizens and the pursuing officers. The trial court also addressed the second primary sentencing factor-character of the defendant. It concluded that Walls lacked character, noting that he lied about not being involved in a gang, was involved in a drug deal, and had a serious prior criminal record. The trial court further addressed the third primary factor-need to protect the public-noting that Walls was a gang member and had previously been convicted of first-degree reckless injury-a negotiated disposition that resulted in the dismissal of two other counts of attempted first-degree intentional homicide (read in for sentencing purposes).
¶37 Ultimately, the trial court stated that it looked at "all of that"-the serious nature of the offense, the defendant's lack of character, and the need to protect the community-and felt that as a consequence, it had "no choice" but to impose the maximum sentence available for the fleeing conviction.
¶38 "Moreover, when we review a sentence, we still look to the entire record, including any postconviction proceedings and to the totality of the court's remarks." Stenzel , 276 Wis. 2d 224, ¶9. In its written decision denying Walls' postconviction motion, the trial court explained:
During its sentencing decision, the court accepted that [Walls] was not involved in the armed robbery but believed that he fled because he was afraid of something he had done either on extended supervision or in violation of the law. The court heard evidence at the trial that [Walls] was involved in a drug deal and believed that to be true, despite [Walls'] denial. In determining an appropriate punishment for the fleeing, the court considered the egregious nature of the offense (speeding between 60 and 80 miles an hour through residential neighborhoods, disregarding stop signs and traffic lights), the defendant's prior record, including very serious charges of first-degree intentional homicide, two counts of attempted first-degree intentional homicide and keeping a drug house-all of which were reduced to a single charge of first-degree reckless injury under the terms of a plea agreement, the defendant's gang affiliation (which he denied), his character for lying and the need to protect the public. Based on all these circumstances, the court determined that a maximum consecutive sentence was warranted in this case.
¶39 We conclude that the trial court properly considered the Gallion factors in imposing its sentence on Walls.
II. The Trial Court Did Not Impose a Harsher Sentence Because Walls Did Not Explain Why He Fled Police
¶40 Walls states that the trial court imposed a harsher sentence upon him because he did not admit his guilt. He asserts that the trial court's focus on getting him to answer its questions about why he fled demonstrates that the trial court improperly sentenced him more harshly, based on his refusal to confess guilt and to express remorse, the same as the trial court did in Scales , 64 Wis. 2d at 497 (holding that where a defendant refuses to admit his guilt, even after jury returns a guilty verdict, that fact alone cannot be used to justify incarceration rather than probation).
¶41 First, as noted above, Walls admitted he was guilty of the fleeing charge-the trial court was not asking him to admit his guilt, but rather to explain why he fled the police. Moreover, in State v. Baldwin , 101 Wis. 2d 441, 456-58, 304 N.W.2d 742 (1981), our supreme court "limited Scales to situations where the trial court bases its sentencing decision exclusively on the defendant's refusal to admit guilt." See State v. Carrizales , 191 Wis. 2d 85, 96, 528 N.W.2d 29 (Ct. App. 1995) (emphasis added). When a trial court considers a defendant's refusal to admit guilt as one of a number of factors at sentencing, the trial court does not erroneously exercise its discretion as long as the court does not give one factor undue weight. See id. (emphasis added).
¶42 Here, as noted above, the trial court considered a number of factors in sentencing Walls and did not give any one factor undue weight. Thus, even if the trial court's questions were deemed to have violated Walls' Fifth Amendment right to refrain from self-incrimination, the trial court's reliance on multiple factors at sentencing establishes that it did not erroneously exercise its discretion. See id.
CONCLUSION
¶43 For these reasons, we conclude that the trial court did not violate Walls' Fifth Amendment right against self-incrimination at sentencing. Therefore, we affirm the trial court's judgment and order.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

Walls was also tried on a charge of armed robbery, as party to a crime. The jury found him not guilty of that charge.

See State v. Gallion , 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197.

The State argues that Walls forfeited these issues because Walls did not object during sentencing.

At the time Walls committed the offenses, he was on extended supervision in a Racine County case. His extended supervision was revoked as a result of the new charges, and, at the time of sentencing in this case, he was serving a nine-year reconfinement sentence.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Fourteenth Amendment to the United States Constitution requires that the states extend the protections of the Fifth Amendment to defendants in state criminal actions. State v. Alexander , 2015 WI 6, ¶24, 360 Wis. 2d 292, 858 N.W.2d 662.