TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00216-CR







Robert Harold Littlefield, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT


NO. CR2001-094, HONORABLE FRED CLARK, JUDGE PRESIDING







 A pickup truck driven by appellant Robert Harold Littlefield crossed the center line
of the highway, entered the lane of oncoming traffic, and collided with an automobile. The driver
of the automobile was killed. A jury found appellant guilty of intoxication manslaughter and
aggravated assault, and assessed punishment for both offenses at imprisonment for twelve years and
a $10,000 fine. See Tex. Pen. Code Ann. §§ 22.02 (West 1994), 49.08 (West Supp. 2002). 
Appellant contends the district court erroneously admitted retrograde extrapolation evidence and
testimony regarding the cumulative effect of alcohol and marihuana use. He also complains that the
State was improperly permitted to use his plea of not guilty against him at the punishment phase and
that his trial counsel did not render effective assistance. We overrule the points of error and affirm.

 In point of error one, appellant contends the district court erroneously permitted
retrograde extrapolation testimony. "Retrograde extrapolation is the computation back in time of
the blood-alcohol level--that is, the estimation of the level at the time of driving based on a test
result from some later time." Mata v. State, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001). In
Mata, the court of criminal appeals held that "the science of retrograde extrapolation can be reliable
in a given case." Id. at 916. The court discussed numerous factors that must be taken into
consideration by a trial court in determining the reliability, and thus the admissibility, of retrograde
extrapolation testimony. Id.

 Dr. Wilmer Tracey Jones, III, was the surgeon who treated appellant at University
Hospital in San Antonio. Jones testified that a blood sample taken from appellant about an hour after
the collision had an alcohol concentration of .038. After briefly testifying, over objection, to the rate
at which alcohol is eliminated by the body, Dr. Jones was asked by the prosecutor, "Assuming that
we have Mr. Littlefield, who isn't a heavy drinker with a faster elimination period, what would his
alcohol concentration have been, generally, at around midnight [the time of the collision] based on
what you have in front of you?" Appellant objected, "This is strictly what's been prohibited by the
Supreme Court [sic]. There are many factors that are supposed to be taken into consideration. They
have not been testified to here today. This is not scientifically sound and he has not been qualified
as an expert in this area to be able to testify to this." The objection was overruled but the question
was not answered.

 The prosecutor then questioned the witness in more detail, and without further
objection, regarding alcohol elimination rates. The witness was never again asked to estimate
appellant's alcohol concentration at the time of the collision. However, after establishing that a
second blood sample was taken from appellant at 3:45 a.m., the prosecutor asked the doctor over
objection to estimate what the alcohol concentration would have been at that time if it had been .038
at 1:00 a.m. Misunderstanding the question, the witness answered, "Like I said, you would add .02
to .03, depending on the average body size--liver size. So somewhere in the range of .58 to .68." (1) 
The prosecutor corrected him: "[Y]ou're doing the reverse. I want you to do the forward
extrapolation." The doctor answered, "You can subtract .2 or .3, so it would be .018 to .08 is what
you'd expect to see." (2)

 We agree with appellant that Dr. Jones was not shown to be qualified to perform
retrograde extrapolation. Further, the witness's uninvited retrograde extrapolation testimony
discussed in the previous paragraph was not shown to be reliable under the standards established in
Mata. (3) The error in the admission of this testimony was harmless, however, as was any further error
in the admission of the doctor's more general testimony that appellant's alcohol concentration would
have been higher at the time of the collision than it was at the hospital. The passenger who was with
appellant at the time of the collision testified that he and appellant had spent the evening drinking
beer and smoking marihuana with others. He said appellant had been acting "hyper" and "weird." 
Another driver who witnessed the collision and stopped to render aid testified that there were beer
cans all over the road. Appellant told this witness that he was "drunk and stoned" and that he was
"on something like--he said acid or shrooms." Appellant jumped in front of another car as it was
attempting to drive past the accident scene; this car "clipped" appellant and knocked him to the
ground. Appellant told a deputy sheriff at the scene that he had been drinking beer and that he "got
some bad dope." As the deputy attempted to speak to him, appellant "jumped up," ran to the
officer's patrol car, grabbed the emergency light bar on the roof of the vehicle, and said, "I see the
light." He then ran toward another vehicle and "just dove and hit his head on the headlight." The
emergency medical technician who treated appellant at the scene testified that he was "combative"
and "acting very confused, disoriented." At the hospital, appellant's urine tested positive for
marihuana. In light of the substantial evidence that appellant did not have the normal use of mental
or physical faculties by reason of the introduction of alcohol and marihuana into his body, Jones's
testimony that appellant's alcohol concentration was above .038 at the time of the collision did not
prejudice his substantial rights. (4) See Tex. R. App. P. 44.2(b); see also Motilla v. State, No. 598-01,
slip op. at 9, 2002 Tex. Crim. App. LEXIS 137 at *12 (Tex. Crim. App. June 26, 2002)
(overwhelming evidence can be factor in evaluation of harmless error). Point of error one is
overruled.

 In his second point of error, appellant argues that Dr. Jones was not qualified and
should not have been permitted to testify that alcohol and marihuana in combination have a
"logarithmic effect" in that each substance exaggerates the effect of the other. This testimony was
first offered without objection. Later, when the witness returned to the subject, appellant objected
that the testimony was speculative. Because this objection was untimely and does not comport with
the complaint on appeal, nothing is presented for review. See Tex. R. App. P. 33.1(a); Tex. R. Evid.
103(a)(1). Point of error two is overruled.

 Appellant next complains that his Sixth Amendment right to a jury trial was violated
when the prosecutor was permitted to use his plea of not guilty against him during the punishment
phase of trial. U.S. Const. amend. VI. Appellant testified at both stages of his trial. During his
punishment stage testimony, he expressed his remorse and told the jury that he was willing to accept
responsibility for the offenses for which he had been convicted. During cross-examination by the
prosecutor, appellant was questioned as follows:



 You said you're willing to accept responsibility and that it's your fault. But
you've had a right to have a jury trial. You had that right and that's what we're
doing now, isn't it?




 Yes, sir.




 And at the beginning of that jury trial the judge asked you, "Mr. Littlefield, how
do you plead? Guilty or not guilty?" Do you remember that?




 Yes, sir.



[Defense counsel]: Your Honor, I'm going to have to object to this line of
questioning. I believe he has a constitutional right to plead not
guilty. I don't think that's supposed to be used against him at the
time of trial.


THE COURT: Overrule the objection. Proceed.



 And that is right. Absolutely you have a right to plead not guilty.




 Yes, sir.




 And you chose to plead not guilty?




 Yes, sir.




 And even after the judge told you what your choices were--"you can plead
guilty or not guilty," you chose to plead not guilty?




 Yes, sir.




 And you came up and you said, "I know it's my fault. I'm sorry." But you were
still hoping that the jury would find you not guilty?




 Yes, sir.




 Well, if this is your fault and you want to accept responsibility, why didn't you
plead guilty?




 Because of the charge--the way it's worded. I don't believe it's correct.




 What's wrong with it?




 I know I am responsible for this man's death and I do take responsibility for the
death. And I know it's a horrible, horrible thing. But I still stand by that I was
not--I don't believe I was intoxicated.




 Appellant refers us to two opinions, neither of which is on point. In Overstreet v.
State, 470 S.W.2d 653, 654-55 (Tex. Crim. App. 1971), the defendant asserted that the prosecutor
had improperly referred to her failure to testify when he argued to the jury at the punishment stage
that "the first great step to rehabilitation is stepping forward and confessing one's guilt." The court
of criminal appeals overruled this contention, but added in dicta: "A defendant in a criminal case
under our laws has the right to enter a plea of not guilty and to file a motion for probation, and the
fact he has exercised those rights should not be utilized against him." Id. at 655. 

 In the second opinion cited by appellant, a federal district judge told the defendant
at sentencing that he, the judge, would assess a lesser punishment if the defendant would "come
clean" and admit his guilt. Thomas v. United States, 368 F.2d 941, 944 (5th Cir. 1966). When the
defendant continued to assert his innocence, the court assessed the maximum punishment. Id. The
court of appeals held that this "ultimatum" unfairly forced the defendant to chose between the
preservation of his rights or a lesser punishment. Id. at 945. The court vacated the sentence and
remanded the case for reassessment of punishment. Id. at 947.

 The prosecutor was entitled to test the sincerity of appellant's assertions of remorse
and acceptance of responsibility by cross-examination. As part of that cross-examination, the
prosecutor was entitled to refer to appellant's testimony at the guilt stage of the trial. In that earlier
testimony, appellant said that on the night in question he did not smoke marihuana, he had consumed
a single beer, and he had not been intoxicated. Appellant further testified that, in his opinion, he had
not been reckless as alleged in the aggravated assault indictment. Instead, appellant expressed the
belief that the collision had been a pure accident that happened because he fell asleep at the wheel. 
Because appellant had previously testified that he was not guilty of the charged offenses, we believe
that the prosecutor's reference to appellant's plea of not guilty during his cross-examination at the
punishment stage was at most harmless error. (5) Point of error three is overruled.

 Finally, appellant urges that his trial counsel was ineffective because he twice failed
to request a postponement or continuance. Appellant refers to two incidents, the first of which came
before testimony began. The prosecutor informed the court pursuant to an order in limine that one
of its witnesses would testify that appellant admitted using LSD and mushrooms. Defense counsel
argued against such testimony on the ground that these intoxicants had not been alleged in the
indictment. The court tentatively ruled that the testimony would be relevant to explain the reckless
conduct alleged in the assault count. The other incident occurred during the second day of testimony,
when defense counsel unsuccessfully objected to the introduction of a videotape showing the road
where the collision occurred because it did not accurately depict the conditions on the night in
question and because he had not been shown the videotape prior to trial. Counsel added, "This is
the second time I've been surprised: first of all, with the evidence on the drugs and also now with
this. It just doesn't give us an opportunity to prepare a proper defense." Appellant now argues that
by failing to request a postponement or continuance, defense counsel waived appellant's right to
complain of unfair surprise on appeal. See Lindley v. State, 635 S.W.2d 541, 544 (Tex. Crim. App.
1982).

 To prevail on a claim of ineffective assistance of counsel, an appellant must show that
counsel made such serious errors that he was not functioning effectively as counsel and that these
errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. 
Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex.
Crim. App. 1986). Counsel's performance must be judged in its totality, rather than by isolating
individual errors or omissions. Oestrick v. State, 939 S.W.2d 232, 237 (Tex. App.--Austin 1997,
pet. ref'd). We must avoid the distortions of hindsight, and evaluate counsel's conduct from his
perspective at the time of trial. See Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). 
A defendant asserting an ineffective assistance claim must overcome a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance. See Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Any allegation of ineffectiveness must be
firmly founded in the record and the record must affirmatively demonstrate the alleged
ineffectiveness. Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the
record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial
counsel's actions. Id.

 The issue of trial counsel's alleged ineffectiveness was not raised by motion for new
trial. We have no explanation in the record for counsel's failure to request a postponement or
continuance when confronted with the State's new evidence. Counsel may have believed that he was
able to effectively defend appellant without a delay of trial. If one or more continuances had been
requested and refused, it is unlikely that this would have resulted in reversal on appeal given the
extent of the other evidence of intoxication and the nature of the videotape. On this record, defense
counsel's isolated failure to request a continuance was not of such significance as to have rendered
his overall assistance ineffective. Point of error four is overruled.

 The court prepared separate judgments of conviction for each count. The judgments
are affirmed. 


 __________________________________________

 Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: August 30, 2002

Do Not Publish
1. If .02 or .03 is added to .038, the total is .058 or .068. Throughout his testimony, the doctor was
cavalier with regard to alcohol concentration figures, at various times omitting either the decimal or
the zero, or both.
2. The witness apparently meant to say that you would subtract .02 or .03 from .038, giving a
result of .018 or .008.
3. For example, Dr. Jones apparently did not consider alcohol absorption rates, a factor discussed
at length in Mata. See Mata v. State, 46 S.W.3d 902, 911-13 (Tex. Crim. App. 2001). The witness
testified, "It [alcohol concentration] actually starts coming down the minute you start drinking."
4. "Intoxication" was alleged in the indictment and defined in the jury charge in terms of
impairment rather than in terms of alcohol concentration. See Tex. Pen. Code Ann. § 49.01(2) (West
Supp. 2002). 
5. A different question might be presented if appellant had not testified at the guilt stage.