# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00216-CR

**Robert Harold Littlefield, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2001-094, HONORABLE FRED CLARK, JUDGE PRESIDING

A pickup truck driven by appellant Robert Harold Littlefield crossed the center line of the highway, entered the lane of oncoming traffic, and collided with an automobile. The driver of the automobile was killed. A jury found appellant guilty of intoxication manslaughter and aggravated assault, and assessed punishment for both offenses at imprisonment for twelve years and a $10,000 fine. *See* Tex. Pen. Code Ann. '' 22.02 (West 1994), 49.08 (West Supp. 2002). Appellant contends the district court erroneously admitted retrograde extrapolation evidence and testimony regarding the cumulative effect of alcohol and marihuana use. He also complains that the State was improperly permitted to use his plea of not guilty against him at the punishment phase and that his trial counsel did not render effective assistance. We overrule the points of error and affirm.

In point of error one, appellant contends the district court erroneously permitted retrograde extrapolation testimony. ARetrograde extrapolation is the computation back in time of the blood-alcohol levelCthat is, the

estimation of the level at the time of driving based on a test result from some later time.@ *Mata v. State*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001). In *Mata*, the court of criminal appeals held that Athe science of retrograde extrapolation can be reliable in a given case.@ *Id*. at 916. The court discussed numerous factors that must be taken into consideration by a trial court in determining the reliability, and thus the admissibility, of retrograde extrapolation testimony. *Id*.

Dr. Wilmer Tracey Jones, III, was the surgeon who treated appellant at University Hospital in San Antonio. Jones testified that a blood sample taken from appellant about an hour after the collision had an alcohol concentration of .038. After briefly testifying, over objection, to the rate at which alcohol is eliminated by the body, Dr. Jones was asked by the prosecutor, AAssuming that we have Mr. Littlefield, who isn=t a heavy drinker with a faster elimination period, what would his alcohol concentration have been, generally, at around midnight [the time of the collision] based on what you have in front of you?@ Appellant objected, AThis is strictly what=s been prohibited by the Supreme Court [*sic*]. There are many factors that are supposed to be taken into consideration. They have not been testified to here today. This is not scientifically sound and he has not been qualified as an expert in this area to be able to testify to this.@ The objection was overruled but the question was not answered.

The prosecutor then questioned the witness in more detail, and without further objection, regarding alcohol elimination rates. The witness was never again asked to estimate appellant=s alcohol concentration at the time of the collision. However, after establishing that a second blood sample was taken from appellant at 3:45 a.m., the prosecutor asked the doctor over objection to estimate what the alcohol concentration would have been at that time if it had been .038 at 1:00 a.m. Misunderstanding the question,

the witness answered, "Like I said, you would add .02 to .03, depending on the average body size—liver size. So somewhere in the range of .58 to .68."[1] The prosecutor corrected him: "[Y]ou're doing the reverse. I want you to do the forward extrapolation." The doctor answered, "You can subtract .2 or .3, so it would be .018 to .08 is what you'd expect to see."[2]

---

[1] If .02 or .03 is added to .038, the total is .058 or .068. Throughout his testimony, the doctor was cavalier with regard to alcohol concentration figures, at various times omitting either the decimal or the zero, or both.

[2] The witness apparently meant to say that you would subtract .02 or .03 from .038, giving a result of .018 or .008.

We agree with appellant that Dr. Jones was not shown to be qualified to perform retrograde extrapolation. Further, the witness's uninvited retrograde extrapolation testimony discussed in the previous paragraph was not shown to be reliable under the standards established in *Mata*.[3] The error in the admission of this testimony was harmless, however, as was any further error in the admission of the doctor's more general testimony that appellant's alcohol concentration would have been higher at the time of the collision than it was at the hospital. The passenger who was with appellant at the time of the collision testified that he and appellant had spent the evening drinking beer and smoking marihuana with others. He said appellant had been acting "hyper" and "weird." Another driver who witnessed the collision and stopped to render aid testified that there were beer cans all over the road. Appellant told this witness that he was "drunk and stoned" and that he was "on something like—he said acid or shrooms." Appellant jumped in front of another car as it was attempting to drive past the accident scene; this car "clipped" appellant and knocked him to the ground. Appellant told a deputy sheriff at the scene that he had been drinking beer and that he "got some bad dope." As the deputy attempted to speak to him, appellant "jumped up," ran to the officer's patrol car, grabbed the emergency light bar on the roof of the vehicle, and said, "I see the light." He then ran toward another vehicle and "just dove and hit his head on the headlight." The emergency medical technician who treated appellant at the scene testified that he was "combative" and "acting very confused, disoriented." At the hospital, appellant's urine tested positive for marihuana. In light of the substantial evidence that appellant did not have the normal use of mental or physical faculties by

_____

[3] For example, Dr. Jones apparently did not consider alcohol absorption rates, a factor discussed at length in *Mata*. *See Mata v. State*, 46 S.W.3d 902, 911-13 (Tex. Crim. App. 2001). The witness testified, "It [alcohol concentration] actually starts coming down the minute you start drinking."

**4**

reason of the introduction of alcohol and marihuana into his body, Jones=s testimony that appellant=s alcohol concentration was above .038 at the time of the collision did not prejudice his substantial rights.[4] *See* Tex. R. App. P. 44.2(b); *see also Motilla v. State*, No. 598-01, slip op. at 9, 2002 Tex. Crim. App. LEXIS 137 at *12 (Tex. Crim. App. June 26, 2002) (overwhelming evidence can be factor in evaluation of harmless error). Point of error one is overruled.

In his second point of error, appellant argues that Dr. Jones was not qualified and should not have been permitted to testify that alcohol and marihuana in combination have a Alogarithmic effect@ in that each substance exaggerates the effect of the other. This testimony was first offered without objection. Later, when the witness returned to the subject, appellant objected that the testimony was speculative. Because this objection was untimely and does not comport with the complaint on appeal, nothing is presented for review. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1). Point of error two is overruled.

Appellant next complains that his Sixth Amendment right to a jury trial was violated when the prosecutor was permitted to use his plea of not guilty against him during the punishment phase of trial. U.S. Const. amend. VI. Appellant testified at both stages of his trial. During his punishment stage testimony, he expressed his remorse and told the jury that he was willing to accept responsibility for the

---

[4] AIntoxication@ was alleged in the indictment and defined in the jury charge in terms of impairment rather than in terms of alcohol concentration. *See* Tex. Pen. Code Ann. ' 49.01(2) (West Supp. 2002).

offenses for which he had been convicted. During cross-examination by the prosecutor, appellant was questioned as follows:

Q. You said you=re willing to accept responsibility and that it=s your fault. But you=ve had a right to have a jury trial. You had that right and that=s what we=re doing now, isn=t it?

A. Yes, sir.

Q. And at the beginning of that jury trial the judge asked you, AMr. Littlefield, how do you plead? Guilty or not guilty?@ Do you remember that?

A. Yes, sir.

[Defense counsel]: Your Honor, I=m going to have to object to this line of questioning. I believe he has a constitutional right to plead not guilty. I don=t think that=s supposed to be used against him at the time of trial.

THE COURT: Overrule the objection. Proceed.

Q. And that is right. Absolutely you have a right to plead not guilty.

A. Yes, sir.

Q. And you chose to plead not guilty?

A. Yes, sir.

Q. And even after the judge told you what your choices wereCAyou can plead guilty or not guilty,@ you chose to plead not guilty?

A. Yes, sir.

Q. And you came up and you said, AI know it=s my fault. I=m sorry.@ But you were still hoping that the jury would find you not guilty?

A. Yes, sir.

**6**

Q. Well, if this is your fault and you want to accept responsibility, why didn=t you plead guilty?

A. Because of the chargeCthe way it=s worded. I don=t believe it=s correct.

Q. What=s wrong with it?

A. I know I am responsible for this man=s death and I do take responsibility for the death. And I know it=s a horrible, horrible thing. But I still stand by that I was notCI don=t believe I was intoxicated.


Appellant refers us to two opinions, neither of which is on point. In *Overstreet v. State*, 470 S.W.2d 653, 654-55 (Tex. Crim. App. 1971), the defendant asserted that the prosecutor had improperly referred to her failure to testify when he argued to the jury at the punishment stage that Athe first great step to rehabilitation is stepping forward and confessing one=s guilt.@ The court of criminal appeals overruled this contention, but added in dicta: AA defendant in a criminal case under our laws has the right to enter a plea of not guilty and to file a motion for probation, and the fact he has exercised those rights should not be utilized against him.@ *Id.* at 655.

In the second opinion cited by appellant, a federal district judge told the defendant at sentencing that he, the judge, would assess a lesser punishment if the defendant would Acome clean@ and admit his guilt. *Thomas v. United States*, 368 F.2d 941, 944 (5th Cir. 1966). When the defendant continued to assert his innocence, the court assessed the maximum punishment. *Id.* The court of appeals held that this Aultimatum@ unfairly forced the defendant to chose between the preservation of his rights or a lesser punishment. *Id.* at 945. The court vacated the sentence and remanded the case for reassessment of punishment. *Id.* at 947.

**7**

The prosecutor was entitled to test the sincerity of appellant=s assertions of remorse and acceptance of responsibility by cross-examination. As part of that cross-examination, the prosecutor was entitled to refer to appellant=s testimony at the guilt stage of the trial. In that earlier testimony, appellant said that on the night in question he did not smoke marihuana, he had consumed a single beer, and he had not been intoxicated. Appellant further testified that, in his opinion, he had not been reckless as alleged in the aggravated assault indictment. Instead, appellant expressed the belief that the collision had been a pure accident that happened because he fell asleep at the wheel. Because appellant had previously testified that he was not guilty of the charged offenses, we believe that the prosecutor=s reference to appellant=s plea of not guilty during his cross-examination at the punishment stage was at most harmless error.[5] Point of error three is overruled.

Finally, appellant urges that his trial counsel was ineffective because he twice failed to request a postponement or continuance. Appellant refers to two incidents, the first of which came before testimony began. The prosecutor informed the court pursuant to an order in limine that one of its witnesses would testify that appellant admitted using LSD and mushrooms. Defense counsel argued against such testimony on the ground that these intoxicants had not been alleged in the indictment. The court tentatively ruled that the testimony would be relevant to explain the reckless conduct alleged in the assault count. The other incident occurred during the second day of testimony, when defense counsel unsuccessfully objected to the introduction of a videotape showing the road where the collision occurred because it did not accurately depict the conditions on the night in question and

---

[5] A different question might be presented if appellant had not testified at the guilt stage.

**8**

because he had not been shown the videotape prior to trial. Counsel added, AThis is the second time I=ve been surprised: first of all, with the evidence on the drugs and also now with this. It just doesn=t give us an opportunity to prepare a proper defense.@ Appellant now argues that by failing to request a postponement or continuance, defense counsel waived appellant=s right to complain of unfair surprise on appeal. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982).

To prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant=s defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Counsel=s performance must be judged in its totality, rather than by isolating individual errors or omissions. *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.CAustin 1997, pet. ref=d). We must avoid the distortions of hindsight, and evaluate counsel=s conduct from his perspective at the time of trial. *See Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). A defendant asserting an ineffective assistance claim must overcome a strong presumption that counsel=s conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel=s actions. *Id.*

The issue of trial counsel=s alleged ineffectiveness was not raised by motion for new trial. We have no explanation in the record for counsel=s failure to request a postponement or

**9**

continuance when confronted with the State=s new evidence. Counsel may have believed that he was able to effectively defend appellant without a delay of trial. If one or more continuances had been requested and refused, it is unlikely that this would have resulted in reversal on appeal given the extent of the other evidence of intoxication and the nature of the videotape. On this record, defense counsel=s isolated failure to request a continuance was not of such significance as to have rendered his overall assistance ineffective. Point of error four is overruled.

The court prepared separate judgments of conviction for each count. The judgments are affirmed.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   August 30, 2002

Do Not Publish

**10**